UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.H.,<br><br>  Plaintiff,<br><br> v.<br><br>ANDREW M. SAUL,<br><br>  Defendant. | Case No. 20-cv-06045-JCS<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S CROSS MOTION FOR REMAND FOR AWARD OF BENEFITS AND GRANTING DEFENDANT'S MOTION FOR REMAND FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 19, 23, 24 |

## I. INTRODUCTION

Plaintiff F.H.,[1] who was found to be disabled as of March 1, 2012 on a concurrent application for disability benefits under Title II and Title XVI of the Social Security Act, challenges a final decision of the Commissioner of Social Security ("Commissioner") finding that his disability ended on June 1, 2018. Plaintiff filed a motion for summary judgment ("Plaintiff's Summary Judgment Motion") asking the Court to overturn the decision of the Commissioner and award benefits, or in the alternative, remand for further administrative proceedings. The Commissioner did not oppose Plaintiff's motion but instead brought a motion to remand the action for further proceedings ("Commissioner's Motion to Remand"). Plaintiff, in turn, brought a cross motion to remand ("Plaintiff's Motion to Remand"), opposing the Commissioner's request for further proceedings and again asking the Court to remand for award of benefits. For the reasons set forth below, the Court GRANTS Plaintiff's Summary Judgment Motion. The Court DENIES

---

[1] Because opinions by the Court are more widely available than other filings and this Order contains potentially sensitive medical information, this Order refers to Plaintiff using only his initials.

Plaintiff's Motion to Remand and GRANTS the Commissioner's Motion to Remand.[2]

## II.  BACKGROUND

### A.  Factual Background

F.H. is thirty-six years old and resides in San Leandro, California. Administrative Record ("A.R.") 230, 384. He was diagnosed with schizophrenia, disorganized type, after a psychotic break in 2012 that resulted in a two-week stay at a psychiatric hospital, followed by two additional weeks in residential treatment at Woodroe Place. AR 621-657, 660, 677, 944. Since that time, F.H. has received treatment for schizophrenia and anxiety disorder at Asian Health Services Specialty Mental Health (formerly known as Asian Community Mental Health Services, hereinafter, "Asian Health Services"). AR 662-680 (treatment records for May 1, 2012 through July 24, 2012), 712-735 (treatment records for June 13, 2013 through December 30, 2013), 784-844 (treatment records for October 9, 2014 through February 8, 2016), 941-961 (mental health assessment and progress notes from September 20, 2018 through May 2, 2019), 962-1031 (treatment records for September 9, 2014 through June 28, 2016), 1100-1116 (assessment and progress notes from September 4, 2019 through November 19, 2019).

Before he was diagnosed with schizophrenia, between 2001 or 2003 and 2011, F.H. worked as a cashier for four hours a day two days a week at Beverly's Fabrics. AR 438, 458. In 2008 he worked at Noah's Bagels but was terminated due to poor performance. AR 458, 945. In 2013, he was employed by Sincere Home Decor in May and June but was terminated. AR 455. F.H. has told his treatment providers that he is "unable to hold a job." AR 943-945. Treating physician Jennifer Chen observed an assessment dated September 4, 2019 that F.H. had worked a "few other part time jobs where he was terminated due to poor performance" including "Kiehls" and Safeway, and also had been let go recently from Semifreddi's bakery. AR 1106; *see also* AR 53-56 (Plaintiff's testimony regarding his history of being terminated from jobs for poor performance). F.H. told a state agency consultative examiner that in June 2017 he worked for a week as a delivery driver but was fired. AR 745.

---

[2] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

F.H. is a part-time student and receives disability accommodations in his classes, including receiving twice as much time to complete his exams, taking exams in a distraction-reduced setting and being allowed to tape record his classes. AR 1041-1043; *see also* AR 65-67 (F.H. hearing testimony that his teacher provides accommodations such as allowing him to take tests home or miss classes when he has panic attacks).

### B.     Procedural Background

F.H. was originally found disabled with a primary diagnosis of "Schizophrenic, Delusional (Paranoid), Schizoaffective, and Other Psychotic Disorder" in a decision dated March 7, 2014, with an onset date of March 1, 2021. Administrative Record ("AR") 175, 177. A continuing disability review ("CDR") was initiated by the Social Security Administration in 2018 and F.H.'s benefits were discontinued on June 8, 2018. AR 203, 204. F.H. filed a request for reconsideration of the cessation on June 28, 2018. AR 230-234. Reconsideration was denied on November 20, 2018. AR 255-257. He filed a timely request for hearing on December 20, 2018. AR 261.

A hearing was scheduled for October 11, 2019 but that hearing was continued to October 29, 2019. AR 100. At the October 29, 2019 hearing, F.H. appeared without counsel before Administrative Law Judge ("ALJ") David LaBarre. AR 95-105. ALJ LaBarre stated on the record that the continuance from October 11, 2019 to October 29, 2019 was not at F.H.'s request but for other reasons. AR 101; *see also* AR 310 (notice moving hearing to October 29, 2019 and stating that ALJ moved the hearing in order to schedule an additional witness). He also explained to F.H. that he was entitled to retain counsel and F.H. requested a continuance to find representation. AR 98-100. ALJ LaBarre told F.H. that the hearing would be continued once but that this was the only postponement F.H. "would get" and that the next hearing would go forward whether F.H. had found someone to represent him or not. AR 100.

The continued hearing before ALJ LaBarre was set for February 28, 2020. AR 358. On February 24, 2020, the Homeless Action Center sent an "urgent postponement request" on behalf of F.H. to ALJ LaBarre, informing the ALJ that the Homeless Action Center would be representing F.H. but that F.H. had just come to their office that day seeking counsel and therefore there would not be sufficient time to assign a particular attorney to his case and for that attorney to

3

1 prepare for the scheduled February 28, 2020 hearing. AR 360. In the request, the Homeless
2 Action Center stated that there was good cause for the postponement under 20 C.F.R. § 404.396 as
3 the representative would be appointed within 30 days of the hearing date and would need time to
4 prepare. *Id.*

5 ALJ LaBarre went ahead with the scheduled hearing on February 28, 2020. F.H. appeared
6 without counsel. The ALJ told him that he was denying the request to continue the hearing
7 because the hearing had already been continued "several" times in the past. AR 42. Directly
8 contradicting his statement at the previous hearing and the notice in the administrative record, ALJ
9 LaBarre stated that the first continuance, from October 11, 2019 to October 29, 2019 was at F.H.'s
10 request. AR 42. ALJ LaBarre stated that F.H. had requested to continue the February 28, 2020
11 hearing because he was "in talks" with the Homeless Action Center about someone "possibly
12 representing him." AR 42. He observed that he had already informed F.H. there would be no
13 more continuances at the previous hearing. AR 41; *see also* AR 15 (ALJ's decision stating that
14 request for continuance "to obtain representation" was denied because ALJ had already advised
15 F.H. that no further continuance would be allowed and there were "no extraordinary
16 circumstances.").

17 On March 16, 2020, ALJ LaBarre issued his decision finding that F.H. was no longer
18 disabled as of June 1, 2018. AR 12-38. A timely request for Appeals Council review was filed on
19 May 11, 2020. AR 368-370. The Appeals Council denied Plaintiff's request for review on August
20 10, 2020 making the ALJ's decision the final decision of the Commissioner.[3] AR 1.

21 **C. Regulatory Framework for Determining Whether Disability Has Ended**

22 As is relevant here, a person is "disabled" for the purposes of receiving disability benefits
23 under Title II ("DIB") and Title XVI ("SSI") if he is unable "to engage in any substantial gainful
24 activity by reason of any medically determinable physical or mental impairment which can be
25 expected to result in death or which has lasted or can be expected to last for a continuous period of

---

[3] F.H.'s attorney has supplied a declaration and a letter from the Social Security Administration reflecting that F.H. applied for disability benefits again on September 15, 2020 and that his application was granted on January 21, 2021. Tillman Decl., Ex. A.

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant's disability has ended, the ALJ must follow an eight-step process. The first step is only required for DIB, but the remaining seven steps apply to both SSI and DIB.

The steps are as follows: 1) if the claimant is engaging in substantial gainful activity, he is no longer disabled; 2) if he has an impairment meeting the requirements set forth in the regulation, he continues to be disabled; 3) if he does not have such an impairment, the ALJ will determine if there has been improvement from his initial qualifying impairment; 4) if his impairment has improved, the ALJ will determine whether it is such that the claimant may work; 5) if there has been no improvement, the disability will be found to continue, unless the ALJ determines an exception applies; 6) if there has been medical improvement, the ALJ will determine whether the impairment continues to be severe, based on whether the claimant's improvements enable his to do basic work activities; 7) if the impairment continues to be severe, the ALJ will assess the claimant's residual functional capacity ("RFC") to continue doing the work he has done in the past, and if his RFC is sufficient that he can do such work, he is no longer disabled; 8) if his RFC does not allow him to do his past work, the ALJ will determine if he can do other work, but if he cannot, he continues to be disabled. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

### D.   Supplemental Regulations for Determining Mental Disability

The Social Security Administration has supplemented the general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step process. *See generally* 20 C.F.R. § 404.1520a. First, the Commissioner must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitation resulting from the claimant's mental impairment with respect to the following functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). If the Commissioner determines that the severity of the claimant's mental

impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. See 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. See 20 C.F.R. § 404.1520a(d)(3).

Appendix 1 provides impairment-specific "Paragraph A" criteria for determining the presence of various listed mental impairments, but all listed mental impairments share certain "Paragraph B" severity criteria in common (and some have alternative "Paragraph C" severity criteria). *See generally* 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00. Any medically determinable mental impairment—*i.e.*, one that satisfies the Paragraph A criteria of one or more listed mental impairments—is sufficiently severe to render a claimant disabled if it also satisfies the general Paragraph B criteria, which requires that a claimant's mental disorder "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id*. at 12.00(A)(2)(b). A claimant has a "marked" limitation if the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d). A claimant with an "extreme" limitation is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e).

This evaluation process is to be used at the second and third steps of the sequential evaluation discussed above. Social Security Ruling 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). If the Commissioner determines that the claimant has one or more severe mental impairments that neither meet nor are equal to any listing, the Commissioner must assess the claimant's residual functional capacity. 20 C.F.R. § 404.1520a(d)(3). This is a "mental RFC assessment [that is] used at steps 4 and 5 of the sequential process [and] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ." Social Security Ruling 96-8p, 1996 WL 374184, at *4.

6

### E. The ALJ's Decision

The ALJ first found that the most recent favorable medical decision finding that F.H. was disabled was dated February 20, 2014. AR 17. This decision is known as the "comparison point decision" or "CPD." *Id.* At the time of the comparison point decision F.H.'s medically determinable impairment was schizophrenia, which was found to result in the following residual functional capacity: he had difficulty maintaining persistence and pace and could not work with the public. *Id.*

Next, the ALJ found that although F.H. had worked intermittently through the date of the ALJ's decision, that work did not constitute substantial gainful activity. *Id.*

The ALJ went on to find that F.H. had no additional impairments after the CPD date, finding that although F.H. complained of anxiety symptoms and a learning disorder, these did not rise to the level of medically determinable impairments. AR 17-18. He rejected F.H.'s complaints of anxiety, despite "symptoms of anxiety" on the basis that "examinations show his mental status is generally intact." AR 18. He rejected F.H.'s complaints of a learning disability because although the record contained a letter stating that F.H. qualified as a student with learning disabilities in reading and reading comprehension, the "longitudinal evidence typically shows intelligent [sic] quotient in the low average range and F.H. testified at the hearing that he has a 3.1 grade average in his classes with no accommodation and no disability assistance." *Id.*

The ALJ found further that F.H. did not have an impairment or combination of impairments that met a Listing, including "listing 12.03 (schizophrenia spectrum and other psychotic disorders), listing 12.06 (anxiety and obsessive-compulsive related disorders) or any other listing in section 12.00 describing mental disorders." *Id.* In reaching this conclusion, the ALJ considered the Paragraph B criteria and concluded they were not met because F.H.'s mental impairments did not cause at least one "extreme" limitation or two "marked" limitations in the four areas of mental functioning. AR 18-19. He further found that Paragraph C criteria were not met. AR 19.

The ALJ went on to conclude that the medical evidence supported a finding that, by June 1, 2018, there had been a decrease in medical severity of his impairment. AR 20. According to the

7

ALJ, F.H.'s medical records "primarily reflect[ed] a history of improved mental health symptoms with treatment compliance." *Id.* He also cited evidence that F.H. "has wide ranging daily activities including an ability to attend college classes." *Id.*

The ALJ found that as of June 1, 2018, F.H. "had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand and remember moderately complex instructions that can be mastered in a three-month period, and can sustain concentration for these instructions in a low stress environment, which is defined as no work with the general public and only occasional but superficial interaction with co-workers that does not involve working on teams, and occasional work place changes. In this environment, he can interact appropriately with supervisors." *Id.*

The ALJ summarized F.H.'s testimony about his impairments, which he found to be not fully consistent with the medical findings and other evidence in the record with respect to degree of intensity, persistence, and limitations. AR 21. The ALJ described "positive findings" by F.H.'s medical providers with respect to F.H.'s medical improvement and opined that F.H.'s treatment was conservative and that he showed improvement with medication compliance. AR 21-22. He also found that F.H.'s activities of daily living supported the RFC, including his ability to drive, shop in stores and take college classes. AR 22.

The ALJ found the opinions of J. Malancharuvil, Ph.D., who reviewed F.H.'s medical records and testified at the February 28, 2020 hearing, to be "consistent with the longitudinal evidence" and "very persuasive." AR 23. According to the ALJ, Dr. Malancharuvil opined that F.H. was "capable of doing moderately complex tasks in a routine setting that are preferably object oriented;" "he should work with things rather than with people;" "he should not be assigned to emotionally charged workplace settings;" "he should not be assigned to tasks that require hypervigilance[;]" there were "no prohibitions for ordinary commonplace interactions with coworkers or supervisors[;]" his "impairment did not meet or medically equal a listing[;]" when F.H. "is compliant with medications, he is doing very well[;]" that F.H.'s "mental status is intact[;]" and that "his intelligence quotient is consistently around low normal, though . . . his ability to study complex subject matters such as architecture suggest[s] higher functioning." AR

23.

The ALJ found the opinion of psychological consultative examiner Dr. Dixit to be partly persuasive. *Id.* According to the ALJ, Dr. Dixit examined F.H. and concluded that F.H. "should have no significant difficulty remembering and following simple instructions; his ability to retain and follow complex and detailed instructions is moderately impaired; his ability to work with the public is moderately impaired; his ability to work with supervisors and co-workers is mildly impaired; his ability to maintain pace and persistence over two-hour increments is moderately impaired; and his ability to engage in tasks requiring mental flexibility is mildly impaired." *Id.*; *see also* AR 745-748 (Dixit psychological examination report based on August 31, 2018 examination). The ALJ found these opinions to be generally consistent with other evidence in the record except that "a restriction to no work with the general public is better supported by the record and reasonably considers the claimant's statements[,]" agreeing with Dr. Malancharuvil on this point. AR 23.

The ALJ found that the opinion of psychological consultative examiner, P. Martin, Ph.D., who completed a report dated December 6, 2019 based on an examination and psychological testing, was not persuasive. AR 24. According to the ALJ, Dr. Martin found that F.H. had "marked limitations" in several categories and this opinion was not consistent with the other evidence in the record. AR 24.[4]

The ALJ found the opinion of psychological consultative examiner M. Acenas, M.D. was not persuasive. AR 24. According to the ALJ, Dr. Acenas found a "complete lack of mental limitations[,]" which was "clearly inconsistent with the longitudinal evidence." *Id.*

The ALJ found that the September 4, 2019 statements of examining psychologist, J. Chen, Psy.D., were not persuasive. *Id.*; *see also* AR 1101-1116 (report of Dr. Chen, of Asian Health Services, conducted in connection with reestablishment of care). He acknowledged that Dr. Chen's statements "may provide evidence of the severity of the claimant's impairment" but

---

[4] In fact, it appears the ALJ misread the report as Dr. Martin did not find marked limitations in any category. *See* AR 1120-1121. Instead, as to all of the categories the ALJ states Dr. Martin found marked limitations, Dr. Martin actually checked the box for "moderate" limitations.

9

concluded they were nonetheless unpersuasive because they did "not provide any meaningful analysis of the claimant's work-related abilities." AR 24-25. He found that a letter by staff psychiatrist K. Yun, M.D., excusing F.H. from jury service on the basis that he was "under psychiatric care for chronic and severe mental illness," was not persuasive for the same reason. AR 25; *see also* AR 775 (Yun note).

The ALJ found that although F.H.'s RFC had increased due to medical improvement, his symptoms remained severe and he could not perform past relevant work. AR 25. Based on testimony offered by a vocational expert at the hearing, the ALJ concluded that F.H. was no longer disabled because he could work as a machine feeder, mail clerk or laborer at a store. AR 26.

### F. Plaintiff's Summary Judgment Motion

In his summary judgment motion, F.H. contends the ALJ erred in numerous respects. First, he asserts his right to be represented by counsel and to due process was violated when the ALJ denied his request for a continuance after he had already secured representation, citing 20 C.F.R. § 404.936(f)(2)(ii).

Second, he argues the ALJ erred in assessing the persuasiveness of opinion evidence to the extent that he found "very persuasive" the opinions of Dr. Malancharuvil, a medical expert who testified at the hearing, even though he had not examined F.H. and his opinions were contradicted by the medical records, while finding the opinions of F.H.'s treating doctor, Jennifer Chen, Psy.D., unpersuasive without offering adequate reasons to support that conclusion.

Third, he asserts that the ALJ erred in finding that F.H.'s anxiety and learning disorders were not medically determinable impairments at step two of the five step analysis and that this finding resulted in harmful error because the ALJ did not take into account F.H.'s nonexertional limitations related to these impairments when he determined that Plaintiff was not disabled.

Fourth, he contends the ALJ did not give adequate reasons for failing to credit F.H.'s testimony about the limiting effects of the symptoms associated with his impairments.

Fifth, he argues that the ALJ erred in finding that F.H. did not meet a listing because the Paragraph B criteria were not met. In particular, he argues that the ALJ's conclusion that F.H.'s mental health conditions resulted in less-than-marked limitations under each of the "paragraph B"

criteria is not supported by substantial evidence because the ALJ "cherry-picked" from the treatment notes, ignoring the evidence in the medical record showing serious psychological abnormalities. The ALJ also erred by relying on F.H.'s testimony that he is a part-time student to support his conclusion that F.H. has a higher degree of functioning, ignoring the evidence in the record that F.H. is provided with various reasonable accommodations.

Sixth, Plaintiff argues that the ALJ's assessment of his RFC is not supported by substantial evidence because he relied heavily on the opinions of a medical expert whose opinions contradicted the record, ignored the opinions of his treating physician and failed to take into account the fact that F.H. receives accommodations as a student. F.H. also contends the ALJ failed to take into account his multiple failed job attempts and improperly pointed to improvement of his symptoms when he was compliant with his medications, failing to acknowledge that F.H. has continued to struggle with medication compliance and that this is a feature of his impairment and not something that should be used against him. Moreover, even when he is compliant with his medications, F.H. asserts, his symptoms are severe.

F.H. argues that in light of these errors, the proper remedy is reversal of the Commissioner's decision and remand for award of benefits. In support of his position, he contends the record is fully developed and that if the improperly rejected evidence (both his own testimony about his limitations and the observations of his treatment providers) were credited as true this evidence would establish that his disability did not end on June 1, 2018.

### G. The Motions to Remand

The Commissioner did not oppose Plaintiff's Summary Judgment Motion. Instead, it filed a motion to remand for further proceedings, describing the possible proceedings that would be conducted as follows:

> On remand, the Appeals Council will obtain an opinion from its Medical Support Staff regarding Plaintiff's mental impairments and functioning, and the Council will consider whether a favorable decision is warranted. If the Council determines that remand is warranted, the Council will remand the case to an Administrative Law Judge and instruct them to do the following: offer Plaintiff an opportunity for a hearing; take any further action needed to complete the administrative record; further evaluate the nature, severity, and effects of Plaintiff's anxiety disorder and learning disorder; obtain

11

>psychological medical expert evidence; further evaluate whether Plaintiff's schizophrenia meets or equals Listing 12.03; further evaluate medical improvement; further evaluate the opinion evidence; if warranted, reconsider Plaintiff's residual functional capacity; if warranted, obtain a vocational expert; and issue a new decision.

Commissioner's Motion to Remand at 1-2. The Commissioner did not specifically address the errors identified by F.H. Nor did the Commissioner address F.H.'s argument that there is no need for further proceedings and that under the credit-as-true rule the Court should remand for award of benefits.

In Plaintiff's Motion to Remand, F.H. reiterates his position that additional proceedings are unnecessary and that the Court should instead award benefits.

## III. ANALYSIS

### A. Standard of Review

District courts have jurisdiction to review the final decisions of the Commissioner and may affirm, modify, or reverse the Commissioner's decisions with or without remanding for further hearings. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3). "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion" and that is based on the entire record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "'Substantial evidence' means more than a mere scintilla," *id.*, but "less than preponderance." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (internal citation omitted). Even if the Commissioner's findings are supported by substantial evidence, the decision should be set aside if proper legal standards were not applied when weighing the evidence. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). In reviewing the record, the Court must consider both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

### B. Standards Governing Remedies

"A district court may affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.' " *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)) (emphasis omitted). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). On the other hand, the court may remand for award of benefits under the "credit as true" rule where: (1) "the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" (2) "there are [no] outstanding issues that must be resolved before a disability determination can be made" and "further administrative proceedings would [not] be useful;" and (3) "on the record taken as a whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041,1045 (9th Cir. 2017) (citations and internal quotation marks omitted); see also Garrison, 759 F.3d at 1021 (holding that a district court abused its discretion in declining to apply the "credit as true" rule to an appropriate case). The "credit-as-true" rule does not apply "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," *Garrison*, 759 F.3d at 1021, or when "there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

### C. Discussion

Because the Commissioner did not oppose Plaintiff's Summary Judgment Motion and concedes that the decision of the Commissioner finding that F.H. was no longer disabled as of June 1, 2018 should be reversed, the only question before the Court is whether this case should be remanded for further administrative proceedings or if, instead, the Court should award benefits under the credit-as-true rule.  Therefore, the Court addresses the ALJ's errors only to the extent they are relevant to the question what remedy is appropriate.  For the reasons stated below, the Court concludes that further proceedings are required.

With respect to the first requirement of the credit-as- true rule, F.H. has made colorable arguments that the ALJ offered legally insufficient reasons for rejecting F.H.'s testimony and statements by his doctors about the severity of his symptoms.  The Commissioner does not dispute

13

1 that the ALJ erred in both respects and therefore the Court assumes that this requirement is
2 satisfied.

3       The second and third requirements, on the other hand, do not appear to be met. First, the
4 Court finds that the record has not been fully developed and that further proceedings may be
5 useful because the evidence in the administrative record is somewhat limited as to F.H.'s specific
6 limitations during the relevant time period (June 1, 2018 to September 15, 2020). F.H.'s own
7 testimony about his limitations does not shed significant light on this question because, as has
8 been observed repeatedly by his medical providers, he has poor insight about his own symptoms
9 and the need for treatment. *See, e.g.*, AR 720 (treating doctor's December 2013 observation that
10 F.H. has "difficulty with insight about his illness"), 727 (June 2013 assessment by treating doctor
11 observing that F.H. has "limited understanding" of his diagnosis and symptoms and reported, "I
12 have no problem" and also noting that although F.H. was "not aware of any changes" as a result of
13 starting medication even though his symptoms did, in fact, improve), 815 (April 2015 observation
14 by treating doctor that F.H. had "difficulty with insight about his illness"), 1102 (September 2019
15 assessment by treating doctor observing that F.H. has "limited insight into his condition and has a
16 history of denying a need for medication"). For example, in 2012, after being released from almost
17 a month of inpatient psychiatric treatment only a week before, F.H. stated in an initial psychiatric
18 assessment by Asian Health Services that he had no symptoms and no problems, even though his
19 mother (with whom he lives and who was involved in his treatment) reported symptoms of "social
20 withdrawal, anhedonia, lack of motivation, self talking, agitation, [and] disorganized speech and
21 behavior." AR 669.

22       Thus, although F.H. completed an adult function report in connection with his application,
23 he was unable to answer many of the questions about his limitations, simply responding "I don't
24 know." AR 447-454. For example, he wrote "I don't know" in response to a question asking how
25 well he handles stress, which is an area in which his providers observed significant limitations. AR
26 453, 1102. Nor is there any indication that the ALJ sought a third-party function report from
27 F.H.'s mother (or any other third party familiar with F.H.'s ability to function) about his
28 limitations, even though the record reflects that F.H. lives with his mother and that she has been

14

involved in his treatment on an ongoing basis.

The testimony from F.H. elicited by the ALJ at the hearing also does not offer significant insight about F.H.'s limitations and the severity of his symptoms. *See* AR 39-94. It appears that F.H. did not always understand the ALJ's questions and he gave answers that were sometimes confusing or internally inconsistent. The Court notes that ALJ LaBarre's denial of F.H.'s request for a continuance of the hearing after the Homeless Action Center had agreed to represent F.H. based on the factually incorrect belief that F.H. had previously requested "several" continuances and was still seeking representation was particularly harmful to F.H. in this respect. Had the ALJ granted the request by F.H. and by the Homeless Action Center so that an attorney could have reviewed his records and assisted at the hearing, as would have been appropriate under 20 C.F.R. § 20 C.F.R. § 404.936(f)(2)(ii), it is likely that more useful testimony could have been elicited.

The medical evidence in the record also presents challenges that are likely related to F.H.'s lack of insight as to his mental health impairment and need for treatment. In particular, it appears F.H. did not receive regular psychiatric care for a period of time starting in June 2016. AR 749 (9/26/2018 letter from Asian Health Services to Social Security Administration stating that F.H. was discharged from care on June 30, 2016 and had received no further care from Asian Health Services). As a consequence, the record does not contain regular treatment notes that might have provided important information about F.H.'s symptoms and limitations. Further, although a doctor at Asian Health Services, Dr. Chen, conducted an extensive assessment of F.H. in 2019, when he sought to restart psychiatric care, the ALJ did not attempt to develop the record as to her assessment of F.H.'s specific work-related limitations, even while acknowledging her opinions reflected the severity of his symptoms, instead simply rejecting her opinions wholesale on the basis that she had not addressed this issue in detail. Given that Dr. Chen was a treating physician who conducted a psychological assessment of F.H. during the relevant time period and who could have spoken knowledgeably on the question of F.H.'s diagnosis (which the medical expert opined was incorrected even without examining F.H.), ALJ LaBarre's failure to develop the record was particularly prejudicial to F.H.

Finally, because of the shortcomings discussed above, the Court cannot determine "without

1 a doubt" that F.H.'s disability did not end (at least temporarily, until his subsequent application

2 was granted) on June 1, 2018.  Rather, further proceedings are necessary to resolve that question.

3 Upon remand, F.H. should be given an opportunity to offer additional evidence, both from

4 medical providers and third parties familiar with his ability to function during the relevant period.

5 To the extent necessary, the Commissioner should make reasonable efforts to develop the record

6 to obtain such evidence.  The Commissioner should revisit all of the steps of the analysis relevant

7 to the determination of whether F.H.'s disability ended in June 2018, including (but not limited to)

8 whether he had any impairments in addition to schizophrenia that were severe, whether an

9 impairment or combination of impairments met or equaled a listing, and his RFC.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Summary Judgment Motion and reverses the decision of the Commissioner.  The Court GRANTS the Commissioner's Motion to Remand and DENIES Plaintiff's Motion to Remand.  This action shall be remanded to the Commissioner for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 18, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge